IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. GADRIX,<br><br>*Plaintiff,*<br><br>v.<br><br>CBRE GROUP, INC., and<br>CBRE, INC.,<br><br>*Defendants.* | ) | CIVIL ACTION FILE NO.:<br><br>____________<br><br>JURY DEMAND |

## **COMPLAINT**

NOW COMES Plaintiff Christopher Guy Gadrix (hereinafter "Plaintiff") and asserts this Complaint against Defendants CBRE Group, Inc. and CBRE, Inc. (hereinafter collectively "Defendants" or "CBRE") for violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (hereinafter "ADEA"), and for related state-law tort claims under Georgia law arising from Defendants' post-termination communications and conduct. Plaintiff states more fully as follows:

## **INTRODUCTION**

1. Plaintiff was employed by Defendants for approximately twenty-eight (28) years, most recently as Director of Transaction Management in Defendants' Atlanta, Georgia office. Plaintiff is over forty (40) years of

age. Plaintiff was terminated on or about January 5, 2026, after he raised good-faith concerns about Defendants' practice of assigning him substantial work for multiple clients while representing to at least one client (Baker Hughes) that he was dedicated full-time to that client's account and while that client continued to reimburse Defendants for one hundred percent (100%) of Plaintiff's compensation and benefits.

2. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination and retaliation under the ADEA (Charge No. 410-2026-10901). The EEOC issued a Notice of Right to Sue on June 9, 2026. This action is filed within ninety (90) days of Plaintiff's receipt of that Notice.

3. Plaintiff also filed a whistleblower complaint under Section 806 of the Sarbanes-Oxley Act of 2002, ("SOX") 18 U.S.C. § 1514A, with the Occupational Safety and Health Administration ("OSHA") (Docket No. 301079849). That investigation remains ongoing. Plaintiff reserves the right to amend this Complaint to add one or more causes of action under SOX once that claim is timely and ripe for *de novo* review in this Court.

4. In addition, upon information and belief, Defendants have made false and damaging statements about Plaintiff to the Georgia Department of Labor and to prospective employers in the commercial real-estate industry, including the false statement that Plaintiff's separation was

due to a "Client Request." These statements have severely damaged Plaintiff's professional reputation and ability to obtain comparable employment and mitigate damages. Plaintiff asserts Georgia tort claims for defamation and tortious interference with business relations / prospective economic advantage to remedy that harm and to obtain discovery concerning Defendants' post-termination communications.

## JURISDICTION

5. This Court has original jurisdiction over Plaintiff's ADEA claims pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's related state-law tort claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

## VENUE

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, N.D. Ga. Defendants maintain offices and conduct substantial business in the Northern District of Georgia, including at 3550 Lenox Road NE, Suite 2300, Atlanta, Georgia 30326. Plaintiff performed work for Defendants in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

7. Plaintiff Christopher Guy Gadrix is an individual who resides at 185 Stone Mill Trail, Sandy Springs, Georgia 30328. At all relevant times Plaintiff was employed by Defendants in the State of Georgia and is over forty (40) years of age.

8. Defendant CBRE Group, Inc. is a Delaware corporation with its principal place of business at 2121 North Pearl Street, Suite 300, Dallas, Texas 75201. CBRE Group, Inc. is a publicly traded company (NYSE: CBRE) and is subject to the reporting requirements of the Securities Exchange Act of 1934. CBRE Group, Inc. is the world's largest commercial real estate services and investment firm, employing more than 155,000 professionals and operating in more than 100 countries.

9. Defendant CBRE, Inc. is a Delaware corporation and a subsidiary of CBRE Group, Inc. CBRE, Inc. maintains offices in the Northern District of Georgia, including the Atlanta office at 3550 Lenox Road NE, Suite 2300, Atlanta, Georgia 30326, where Plaintiff worked.

10. At all relevant times, Defendants were "employers" within the meaning of the ADEA, 29 U.S.C. § 630(b), and employed twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff timely filed a Charge of Discrimination with the EEOC (Charge No. 410-2026-10901) alleging age discrimination and retaliation under the ADEA. The EEOC investigated the Charge and, on June 9, 2026, issued a Determination and Notice of Rights (Notice of Right to Sue). Plaintiff received the Notice of Right to Sue on or about June 9, 2026, or shortly thereafter. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

12. Plaintiff also filed a complaint with OSHA under Section 806 of the Sarbanes-Oxley Act (Docket No. 301079849). That administrative investigation remains pending. Plaintiff expressly reserves the right to amend this Complaint pursuant to Fed. R. Civ. P. 15 to add one or more causes of action under SOX once the claim becomes ripe for *de novo* review in this Court.

## FACTUAL ALLEGATIONS

13. Plaintiff began his employment with CBRE in approximately 1997. Over the course of approximately twenty-eight (28) years he advanced through successive positions of increasing responsibility, ultimately serving as Director of Transaction Management. Throughout his tenure Plaintiff maintained a strong performance record, received promotions, and had no history of disciplinary action.

14. In 2019, Plaintiff was dedicated to the Baker Hughes account. Baker Hughes reimbursed CBRE for one hundred percent (100%) of Plaintiff's base salary, bonus compensation, and benefits. Plaintiff understood, and CBRE's course of dealing and internal records reflected, that he was a dedicated Baker Hughes resource and that one hundred percent (100%) of his time was to be devoted to that account.

15. Beginning in 2021, CBRE assigned Plaintiff additional work on the Avery Dennison account. At Avery Dennison's request, from September 1, 2023, through December 31, 2023, Plaintiff served as Avery Dennison's Interim Real Estate Director in addition to his other CBRE responsibilities. Upon information and belief, Baker Hughes continued to reimburse CBRE for one hundred percent (100%) of Plaintiff's compensation and benefits during this period.

16. In August 2025, Plaintiff received a promotion and was assigned to the UPS account through Alex Hayden, Vice Chairman. The UPS role required Plaintiff to work on site at UPS headquarters in Atlanta four (4) days per week. Plaintiff was required to conceal the fact that he was working at UPS in his interactions with Baker Hughes and Avery Dennison. Upon information and belief, Baker Hughes continued to reimburse CBRE for one hundred percent (100%) of Plaintiff's

compensation and benefits while Plaintiff performed substantial work for UPS, Avery Dennison, Wells Fargo, and other clients.

17. On November 13, 2025, Plaintiff requested and held a meeting with Lisa Harber, Executive Vice President, at CBRE's Atlanta office. In that meeting, Plaintiff expressed good-faith concerns about the demands on his time and about the fact that Baker Hughes was, in effect, paying his full compensation as their dedicated account manager while he was simultaneously being assigned substantial work for other clients. Plaintiff reasonably believed these billing and compensation-allocation practices could involve fraud, mail or wire fraud, SEC-rule issues, or fraud against shareholders.

18. Ms. Harber's reaction to Plaintiff's concerns was hostile. Plaintiff perceived that his inquiry was treated as a threat rather than a legitimate compliance concern.

19. On January 5, 2026, approximately seven (7) weeks after Plaintiff raised his concerns, Plaintiff attended a meeting with Lisa Harber, Glenn Dyke (Vice Chairman), and Brittany Barnes (People Business Partner / HR). Ms. Harber informed Plaintiff that his position was being eliminated due to "restructuring" and that the decision had "nothing to do at all with [his] work performance." Plaintiff's last day of employment was set as February 1, 2026. Ms. Harber directed Plaintiff to use the remainder of

January seeking another position within CBRE and emphatically instructed him not to contact any clients.

20. Upon information and belief, Plaintiff was the only employee among approximately fifty (50) individuals on his team whose position was eliminated as part of the purported restructuring.

21. On February 1, 2026, Plaintiff was presented with a severance agreement, which he declined to sign.

22. When Plaintiff received the official separation notice, the reason CBRE reported to the Georgia Department of Labor was "Client Request." That statement is false. Plaintiff personally confirmed with representatives of Baker Hughes, UPS, and Avery Dennison that none of those clients requested his removal from their accounts.

23. CBRE has given shifting and inconsistent explanations for Plaintiff's termination, including "restructuring," "position elimination," "client request," that a client had decided to pivot to a "digital solution," and an internal explanation that Plaintiff "was not happy" and wanted to pursue other opportunities. These explanations are inconsistent with one another and with the "Client Request" reason reported to the Georgia Department of Labor. They are false and pretextual.

24. At the time of Plaintiff's termination, Plaintiff was replaced by, or his duties were assumed by, a substantially younger individual believed to be in his early thirties.

25. Following his termination, and consistent with CBRE's directive that he seek internal positions, Plaintiff applied for approximately twenty-one (21) positions within CBRE for which he was qualified. Despite his extensive experience and recent promotion, Plaintiff was not selected for any of those positions. Upon information and belief, those roles were filled by substantially younger candidates.

26. Plaintiff is over forty (40) years of age. Age was the but-for cause of Defendants' decision to terminate Plaintiff's employment and to refuse to rehire him into available internal positions.

27. Upon information and belief, Defendants have made false and damaging statements about Plaintiff to prospective employers in the commercial real-estate industry and have otherwise "blackballed" Plaintiff, including by disseminating or permitting the dissemination of the false "Client Request" explanation for his separation. These statements and communications have severely damaged Plaintiff's professional reputation and have prevented him from obtaining comparable employment despite his twenty-eight (28) years of experience and strong performance record.

28. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, damage to his professional reputation, and other compensable injuries.

29. Defendants' conduct in making the false "Client Request" statement to the Georgia Department of Labor, in disseminating or permitting the dissemination of false and damaging information about Plaintiff to prospective employers, and otherwise blackballing Plaintiff was undertaken in bad faith, with malice, and with the intent to injure Plaintiff's professional reputation and employment prospects. Defendants' actions in the underlying transaction have caused Plaintiff considerable mental pain and suffering, unnecessary trouble, and expense. Plaintiff therefore specially pleads entitlement to the expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT I
## Age Discrimination in Violation of the ADEA

30. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

31. Plaintiff is a member of the class protected by the ADEA in that he is over forty (40) years of age.

32. Plaintiff was qualified for his position and performed his job duties in a satisfactory manner throughout his employment.

33. Defendants subjected Plaintiff to adverse employment actions by terminating his employment on or about January 5, 2026, and by thereafter refusing to select him for available internal positions, for which he was qualified.

34. Age was the but-for cause of Defendants' decisions to terminate Plaintiff and to refuse to rehire him.

35. Defendants' conduct was willful within the meaning of the ADEA.

36. As a direct and proximate result of Defendants' willful age discrimination, Plaintiff has suffered damages including lost wages and benefits, including back pay and front pay, and is entitled to liquidated damages, attorneys' fees, costs and all relief available under the ADEA.

## COUNT II
## Defamation (Libel and/or Slander) under Georgia Law

37. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

38. Defendants published to the Georgia Department of Labor, and upon information and belief to one or more third parties including prospective employers in the commercial real-estate industry, false statements

concerning Plaintiff, including but not limited to the statement that Plaintiff's separation from employment was due to a "Client Request."

39. The statement that Plaintiff's separation was due to a "Client Request" is false. None of Plaintiff's clients requested his removal from their accounts.

40. The false statements were published without privilege or with actual malice, in that Defendants knew the statements were false or acted with reckless disregard of their falsity and/or with ill will toward Plaintiff arising from his protected activity and termination.

41. The false statements tend to injure Plaintiff in his trade, office, or profession and expose him to public hatred, contempt, or ridicule. Damages are therefore presumed under Georgia law for defamation *per se*.

42. Defendants' conduct showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences. Plaintiff is therefore entitled to punitive damages pursuant to O.C.G.A. § 51-12-5.1.

43. As a direct and proximate result of Defendants' defamatory statements, Plaintiff has suffered damage to his professional reputation, loss of employment opportunities, emotional distress, and other compensable injuries.

44. Plaintiff specially pleads and prays for the expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11, because Defendants acted in bad faith, have been stubbornly litigious, or have caused Plaintiff unnecessary trouble and expense in the underlying transaction.

## COUNT III
## Tortious Interference with Business Relations / Prospective Economic Advantage under Georgia Law

45. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

46. Plaintiff had valid business relationships and/or prospective business relationships with potential employers in the commercial real-estate industry.

47. Upon information and belief, Defendants, acting with improper motive or means (including the dissemination of the false "Client Request" explanation and other negative statements about Plaintiff), induced or caused prospective employers not to hire Plaintiff or otherwise interfered with Plaintiff's ability to obtain comparable employment.

48. Defendants' interference was intentional, without privilege or justification, and undertaken with the purpose of harming Plaintiff's professional reputation and employment prospects in retaliation for his protected activity and/or because of his age.

49. Defendants' conduct showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences. Plaintiff is therefore entitled to punitive damages pursuant to O.C.G.A. § 51-12-5.1.

50. As a direct and proximate result of Defendants' tortious interference, Plaintiff has been unable to secure comparable employment despite extensive efforts, has suffered lost wages and benefits, damage to his professional reputation, emotional distress, and other compensable injuries.

51. Plaintiff specially pleads and prays for the expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11, because Defendants acted in bad faith, have been stubbornly litigious, or have caused Plaintiff unnecessary trouble and expense in the underlying transaction.

## RESERVATION OF RIGHTS – SOX CLAIM

52. Plaintiff has filed a timely complaint with OSHA under Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (Docket No. 301079849), based on the same core facts alleged herein concerning the simultaneous assignment of work to multiple clients while one client continued to reimburse one hundred percent (100%) of Plaintiff's compensation, and the subsequent termination. That administrative proceeding remains

pending. Plaintiff expressly reserves the right to amend this Complaint pursuant to Fed. R. Civ. P. 15 to add one or more causes of action under SOX once the claim becomes ripe for de novo review in this Court (either upon issuance of a final OSHA determination or upon the expiration of 180 days from the filing of the OSHA complaint without a final decision, whichever occurs first).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendants on all claims asserted herein;

b. Award Plaintiff back pay, front pay, and all other lost wages and benefits in an amount to be determined at trial;

c. Award Plaintiff liquidated damages in an amount equal to the amount of unpaid wages and benefits, as provided by the ADEA for willful violations;

d. Award Plaintiff compensatory damages for emotional distress, mental anguish, damage to reputation, and other non-pecuniary losses based on his state-law claims;

e. Award Plaintiff punitive damages pursuant to O.C.G.A. § 51-12-5.1 on his claims for defamation and tortious interference with

business relations / prospective economic advantage, in an amount to be determined by the jury;

f. Award Plaintiff the expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11, because Defendants acted in bad faith, have been stubbornly litigious, or have caused Plaintiff unnecessary trouble and expense in the underlying transaction;

g. Award Plaintiff reinstatement or, in the alternative, front pay and other appropriate equitable relief;

h. Award Plaintiff his reasonable attorneys' fees, costs, and expenses of this action pursuant to the ADEA and any other applicable authority;

i. Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

j. Grant such other and further relief as the Court deems just and proper; and

k. Preserve Plaintiff's right to amend this Complaint to assert claims under the Sarbanes-Oxley Act once those claims are timely.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted, this 4th day of September 2026.

/s/ *J. Larry Stine*
J. Larry Stine (Ga. Bar No.: 682555)
Elizabeth K. Dorminey (Ga. Bar No.: 225935)
WIMBERLY LAWSON STECKEL SCHNEIDER
& STINE, P.C.
3400 Peachtree Rd. NE
Suite 400
Atlanta, GA 30326
404-365-0900 - Phone
404-261-4737 - Fax
ekd@wimlaw.com

*Counsel for Plaintiff Chris Gadrix*